252 N.J. Super. 155 (1991)
599 A.2d 565
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CESAR MENDEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 22, 1991.
Decided November 27, 1991.
*157 Before Judges PRESSLER, SKILLMAN and D'ANNUNZIO.
Wilfredo Caraballo, Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).
Herbert H. Tate, Jr., Essex County Prosecutor, attorney for respondent (Gary A. Thomas, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was convicted by a jury of purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3a(1) and (2); possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5b; and possession of a handgun with the purpose to use it unlawfully against the person of another, in violation of N.J.S.A. 2C:39-4a.[1] The court sentenced defendant to life imprisonment, with thirty years of parole ineligibility, for murder, and consecutive terms of five years imprisonment for possession of a handgun without a permit, and ten years imprisonment, with five years of parole ineligibility, for possession of a weapon for unlawful purpose, for an aggregate sentence of life plus fifteen years imprisonment, with thirty-five years of parole ineligibility.
On appeal the Public Defender has filed a brief on defendant's behalf which makes the following arguments:

*158 I. THE TRIAL JUDGE IMPROPERLY REFUSED TO CHARGE RECKLESS MANSLAUGHTER AS A LESSER INCLUDED OFFENSE THEREBY VIOLATING DEFENDANT'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS.
II. THE TRIAL JUDGE INCORRECTLY INSTRUCTED THE JURY THAT A DEFENDANT IS AN ACCOMPLICE TO A CRIME IF HE ACTS "WILLFULLY AND KNOWINGLY" IN AIDING ANOTHER TO COMMIT THAT CRIME, WHEN IN FACT, ONLY A CULPABILITY LEVEL OF "PURPOSELY" SATISFIES THE REQUIREMENTS OF N.J.S.A. 2C:2-6. (Not Raised Below).
III. THE TRIAL JUDGE'S INSTRUCTION TO THE JURY THAT THE JURORS COULD INFER THAT DEFENDANT'S PURPOSE WAS TO TAKE A LIFE IF THEY FOUND HE KILLED THE VICTIM WITH A DEADLY WEAPON VIOLATED DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS BY FAILING TO INFORM THE JURY ADEQUATELY THAT THE INFERENCE WAS (A) ONLY PERMISSIBLE, NOT MANDATORY, AND (B) CAN BE OVERCOME ONCE IT IS MADE THEREBY LESSENING THE STATE'S BURDEN OF PROOF. (Not Raised Below).
IV. DEFENDANT'S CONVICTION FOR POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE SHOULD BE REVERSED AND REMANDED FOR A NEW TRIAL BECAUSE THE TRIAL JUDGE VIOLATED DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS BY INSTRUCTING THE JURY THAT "KNOWING," RATHER THAN "PURPOSEFUL," POSSESSION FULFILLS THE POSSESSION ELEMENT OF N.J.S.A. 2C:39-4a. (Not Raised Below).
V. THE CONSECUTIVE SENTENCES IMPOSED UPON DEFENDANT ARE MANIFESTLY EXCESSIVE.
Defendant has filed a supplemental pro se brief which makes the following additional arguments:
I. DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AND TO AN IMPARTIAL JURY WERE VIOLATED WHEN COUNSEL FAILED TO USE PREEMPTORY STRIKES TO EXCLUDE VICTIMS OF CRIME FROM THE JURY; Const.Amend. 5, 6, 14.
II. DEFENDANT SHOULD HAVE ENJOYED SPOUSAL PRIVILEGE REGARDING ELIZABETH LOPEZ, HIS "COMMON LAW WIFE", AND THE MOTHER OF HIS SIX CHILDREN, WHEREFORE THE TRIAL MUST BE REVERSED AND A NEW TRIAL MUST BE GRANTED. (Not Raised Below).
III. DEFENDANT'S STATEMENT SHOULD HAVE BEEN SUPPRESSED BECAUSE DEFENDANT WAS NOT AFFORDED ANY DUE PROCESS SAFEGUARDS WHEN THE ALLEGED STATEMENT WAS TRANSCRIBED FROM SPANISH TO ENGLISH. (Not Raised Below).
*159 We conclude for the reasons expressed in section I of this opinion that the trial court properly refused to submit the lesser included offense of reckless manslaughter to the jury. Moreover, even if the court had erred in refusing to submit reckless manslaughter to the jury, we would conclude, as set forth in section II of this opinion, that the error was harmless, because the court instructed the jury regarding the lesser included offense of aggravated manslaughter and the jury nonetheless found defendant guilty of purposeful or knowing murder. Defendant's other arguments relating to the court's instructions to the jury, defense counsel's representation of the defendant and the conduct of the trial are clearly without merit. R. 2:11-3(e)(2). Although these arguments do not require extended discussion, we note that the objections now made by defendant to the court's instructions were not raised at trial. While those instructions could have been refined in the manner suggested by defendant's appellate arguments, we believe that the instructions, considered in their entirety, adequately conveyed the applicable law and could not have misled the jury. Accordingly, we affirm defendant's conviction. However, we also conclude for the reasons expressed in section III of this opinion that the court failed to follow the sentencing criteria set forth in State v. Yarbough, 100 N.J. 627, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986), in imposing consecutive sentences upon defendant. Therefore, we remand for resentencing.

I
N.J.S.A. 2C:1-8(e) provides that "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." This "rational-basis" test establishes a "low threshold ... for permitting a charge on a lesser included offense." State v. Crisantos, 102 N.J. 265, 278, 508 A.2d 167 (1986). However, a court should not submit a lesser included offense which invites the jury to engage in sheer speculation. *160 State v. Rose, 112 N.J. 454, 479-85, 548 A.2d 1058 (1988); State v. Davis, 50 N.J. 16, 28, 231 A.2d 793 (1967), cert. denied, 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968).
Defendant was indicted for purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3a(1) or (2). Under the Code, conduct is "purposeful" if it is the person's "conscious object" to cause a result, N.J.S.A. 2C:2-2b(1), and conduct is "knowing" if the person is aware that "it is practically certain that his conduct will cause such a result." N.J.S.A. 2C:2-2b(2). Defendant claims that the court should have submitted reckless manslaughter, in violation of N.J.S.A. 2C:11-4b(1), as a lesser included offense of purposeful or knowing murder. A person acts "recklessly," justifying a conviction for reckless manslaughter, if he "consciously disregards a substantial and unjustifiable risk that [death] will result from his conduct." N.J.S.A. 2C:2-2b(3). Therefore, the question is whether there was a rational basis for the jury to find that defendant "recklessly" caused the victim's death by consciously disregarding the substantial risk that death would result from his conduct or whether defendant was necessarily aware that it was practically certain his conduct would cause death or serious bodily injury. State v. Rose, supra, 112 N.J. at 484, 548 A.2d 1058.
The State presented evidence that defendant and the victim became involved in some form of argument on a Newark street corner around 11:30 p.m. on September 28, 1988. Defendant went into a building, from which he re-emerged a few minutes later with an Uzi machine gun. Defendant then opened fire into a group of people which included the victim, who was killed by one of the shots.
Defendant did not testify at trial. However, the State introduced a pretrial statement defendant gave to the police, which included the following account of the shooting:
I saw Marisol Baez walking down the street with a bag in her hand.
Then I saw my cousin, Juanchi [Juan Rivera Mendieta], walk over to her, grab the bag and pull a machine gun out of the bag and start shooting at the building across from 69 North 9th at the black guys in front.

*161 The black guys started running all different ways and then I walked over to my cousin and took the gun off him. Then I saw another group of black guys just standing on the corner by my building and they started walking towards me. I told them to back off and then I fired some rounds in the air.
After I fired the rounds, the black guys that were coming to me backed off.
The State also presented the testimony of Marisol Baez, mentioned in defendant's statement, who gave yet another account of the shooting. She stated that an unknown Hispanic male handed the gun to codefendant Mendieta, who handed the gun to defendant, who then fired a series of shots at the crowd. According to Baez, defendant subsequently handed the gun back to Mendieta, who fired another series of shots at the crowd. Defendant's girlfriend corroborated portions of this account of the shooting.
Thus, both the State's witnesses and defendant agreed that the victim was killed by a person firing multiple shots into a crowd with a machine gun. The only salient difference between the State's and defendant's version of the offense was the identity of the shooter, with the State's witnesses identifying defendant as the shooter and defendant identifying Mendieta. Furthermore, although defendant stated that he fired the gun into the air after Mendieta fired it into the crowd, there is no evidence even suggesting that the victim was killed by a bullet which ricocheted off some other object. Consequently, the only version of the offense for which there is any support in the record is that the victim was killed by one of the bullets which either defendant or Mendieta fired directly into the crowd.
We believe that a person who fires a machine gun into a crowd is necessarily aware that "it is practically certain" this conduct will cause death or serious bodily injury, N.J.S.A. 2C:2-2b(2). This conclusion is supported by State v. Rose, supra, in which the defendant was convicted of murder for shooting a police officer in the stomach with a shotgun. In arguing that the court erred in refusing to submit aggravated manslaughter to the jury as a lesser included offense, defendant relied upon *162 his pretrial statement that "when he pulled [the shotgun] out of the sack it apparently had cocked and when it came out of the sack the gun went off striking the police officer in [the] abdomen." 112 N.J. at 480, 548 A.2d 1058. However, the Court concluded that defendant's statement, considered in the context of all the evidence presented at trial, "reflected an acknowledgement of [his] responsibility for the shooting without any explanation of how it occurred" and therefore "constituted far too speculative and unsubstantial a basis for a manslaughter verdict." Id. at 483, 548 A.2d 1058. The Court further noted that "in the absence of insanity or diminished capacity, a person firing a sawed-off shotgun into the abdomen of another at point-blank range necessarily is aware that `it is practically certain' that such conduct will cause the victim's death." Id. at 484, 548 A.2d 1058.
Similarly, we believe that absent some form of mental derangement, of which no evidence was presented, a person firing a machine gun into a crowd necessarily would be aware that it is practically certain his conduct will cause death. Indeed, even if the jury could find that defendant was only aware it was "practically certain" his conduct would cause "serious bodily injury," it still would be required to find him guilty of purposeful or knowing murder rather than manslaughter. As the Court held in State v. Gerald, 113 N.J. 40, 82, 549 A.2d 792 (1988), "an actor may be convicted of murder both (1) when he or she acted with the purpose or knowledge that the victim's death would follow, and (2) when he or she acted with the purpose or knowledge to inflict only serious bodily injury, but the injury resulted in the victim's death." Therefore, there was no rational basis for submitting reckless manslaughter to the jury as a lesser included offense of purposeful or knowing murder.[2]

*163 II
Even if the trial court had erred in failing to submit reckless manslaughter to the jury as a lesser included offense, that error would not require a reversal of defendant's conviction because the jury considered the lesser included offense of aggravated manslaughter and nevertheless found defendant guilty of purposeful or knowing murder.
To establish guilt of either aggravated manslaughter or reckless manslaughter, the State must prove that the defendant recklessly caused the death of another human being. N.J.S.A. 2C:11-4a and b(1). Aggravated manslaughter requires proof of the additional element that defendant acted "under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4a. In State v. Curtis, 195 N.J. Super. 354, 363, 479 A.2d 425 (App.Div. 1984), certif. denied, 99 N.J. 212, 491 A.2d 708 (1984), we held that the only difference between aggravated manslaughter and reckless manslaughter is "the difference in the degree of the risk that death will result from defendant's conduct." The degree of risk required for reckless manslaughter is "a mere possibility of death" while the "additional element" in aggravated manslaughter that "death be caused `under circumstances manifesting extreme indifference to human life' elevates the risk level from a mere possibility to a probability." Ibid. In State v. Grunow, 102 N.J. 133, 506 A.2d 708 (1988), the Supreme Court adopted this view of the difference between aggravated manslaughter and reckless manslaughter, citing Curtis for the proposition that "[t]he Legislature recognized a single concept of reckless homicide that constituted manslaughter, with the gradation of punishment based upon the degree of risk of death." 102 N.J. at 143, 506 A.2d 708.
*164 The trial court instructed the jury regarding the elements of aggravated manslaughter in conformity with Curtis:
[S]hould you find the defendant not guilty of murder under count 1, then ... you should consider the crime of aggravated manslaughter. Now, a person is guilty of aggravated manslaughter if he recklessly causes the death of another person under circumstances manifesting extreme indifference to the value of human life....
With respect to the first element, that the defendant caused Orlandez Corbett's death, you must find that Orlandez Corbett would not have died but for the defendant's conduct. With respect to the second element, in order to find that the defendant recklessly caused Orlandez Corbett's death, you must find that the defendant was aware of and consciously disregarded a substantial and unjustifiable risk that death would result from his conduct. And the risk must be of such a nature and degree that considering the nature and purpose of the defendant's conduct and circumstances known to the defendant, his disregard of that risk that the material element would result, death, or was practically certain to result, his disregard of that risk is a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation or in the same situation.... [T]o find the third element, you must find that the defendant acted under circumstances manifesting extreme indifference to the value of human life.
Now, the phrase under circumstances manifesting extreme indifference to the value of human life, does not focus on the defendant's state of mind but rather under circumstances which you find that he acted. The State must prove that the defendant acted in a way that showed the defendant was indifferent to whether Orlandez Corbett lived or died. That is, that the defendant acted in a way that showed that he did not care that someone was killed.
Now, the defendant must have acted in a way under the circumstances that involved a probability of death.
....
I remind you, however, that you are not to consider aggravated manslaughter unless you find the defendant not guilty on the charge of murder.
Although the jury was properly instructed regarding the elements of the lesser included offense of aggravated manslaughter, it nevertheless found defendant guilty of purposeful or knowing murder. This jury verdict constituted a clear rejection of defendant's claim that his conduct was not purposeful or knowing, but only reckless, which is an essential element of both aggravated and reckless manslaughter. Consequently, there is no reasonable possibility the trial court's failure to submit the lesser included offense of reckless manslaughter to the jury could have contributed to its verdict.
*165 This conclusion is supported by State v. Vujosevic, 198 N.J. Super. 435, 444-46, 487 A.2d 751 (App.Div.), certif. denied, 101 N.J. 247, 501 A.2d 920 (1985), in which we concluded that the trial court erred in not submitting aggravated assault to the jury as a lesser included offense of murder, but that the error was harmless, because the jury found defendant guilty of aggravated manslaughter even though it was given the alternative of finding him guilty of the lesser offense of reckless manslaughter:
Here it is clear that the jury was not in reasonable doubt as to the proof of any of the elements of aggravated manslaughter because surely if it had been but had not desired completely to acquit defendant it would have returned a verdict of guilty to the lesser charge of manslaughter. We cannot believe that if the jury thought defendant was not responsible for Baron's death it would have convicted him of an offense more serious than the least severe homicide charge available to it. [198 N.J. Super. at 445-46, 487 A.2d 751].[3]
Similarly, the courts in other jurisdictions have held that a jury, by finding the defendant guilty of a higher offense to the exclusion of the immediately lesser-included offense, may be found to have necessarily rejected all other lesser included offenses of the same character, even if the court failed to instruct the jury on the additional lesser offenses. See, e.g., Cooper v. Campbell, 597 F.2d 628, 631 (8th Cir.), cert. denied, 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69 (1979); Ex Parte *166 Jordan, 486 So.2d 485 (Ala. 1986); Ridgely v. State, 739 P.2d 1299, 1301 (Alaska Ct. App. 1987); State v. White, 144 Ariz. 245, 697 P.2d 328, 330 (1985); People v. Sedeno, 10 Cal.3d 703, 720-21, 518 P.2d 913, 924-25, 112 Cal. Rptr. 1, 12-13 (1974); State v. Abreau, 363 So.2d 1063 (Fla. 1978); State v. Nowlin, 244 N.W.2d 591, 596 (Iowa 1976); State v. Merrill, 274 N.W.2d 99, 104-05 (Minn. 1978); People v. Richette, 33 N.Y.2d 42, 303 N.E.2d 857, 858, 349 N.Y.S.2d 65, 66 (1973); State v. Barriault, 20 Wash. App. 419, 581 P.2d 1365, 1371 (Ct.App. 1978); State v. Truax, 151 Wis.2d 354, 444 N.W.2d 432, 436-37 (Ct.App. 1989); see also Schad v. Arizona, supra. But see United States ex. rel. Matthews v. Johnson, 503 F.2d 339, 346 (3d Cir.1974), cert. denied, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975). The reasoning in Sedeno is illustrative of these cases:
[I]n some circumstances it is possible to determine that although an instruction on a lesser included offense was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury....
In the instant case, the jury necessarily rejected defendant's evidence that his diminished capacity negated intent to kill when it found the shooting to be first degree rather than second degree murder. Thus, the failure to give an instruction on involuntary manslaughter could not have been prejudicial to defendant since the offense could have been no less than voluntary manslaughter. [518 P.2d at 924-25, 112 Cal. Rptr. at 12-13].
Similarly, in Abreau the court stated:
[I]f a defendant is charged with offense "A" of which "B" is the next immediate lesser-included offense (one step removed) and "C" is the next below "B" (two steps removed), then when the jury is instructed on "B" yet still convicts the accused of "A" it is logical to assume that the panel would not have found him guilty only of "C" (that is, would have passed over "B"), so that the failure to instruct on "C" is harmless. [363 So.2d at 1064].
This case is fundamentally different from State v. Grunow, supra, and State v. Crisantos, supra, which defendant relies upon in arguing that the asserted error in not submitting reckless manslaughter to the jury requires a new trial. In Grunow, the Court rejected the State's argument that the trial *167 court's erroneous instruction regarding the lesser included offense of passion/provocation manslaughter was harmless, because the jury found defendant guilty of aggravated manslaughter, which is an offense that cannot be mitigated by passion/provocation:
[The State's harmless error] argument ... assumes one major premise that we cannot accept: it assumes that the jury inevitably proceeded on a step-by-step basis to consider murder first, and then aggravated manslaughter.
....
Unlike the verdict in State v. Vujosevic, 198 N.J. Super. 435 [487 A.2d 751] (App.Div. 1985), this verdict does not leave us with an abiding certainty that the error was harmless. In Vujosevic the jury's conviction of the defendant on aggravated manslaughter, the greater of the two available verdicts, convinced the court that had the jury entertained any doubt about the offense, it would have found the lesser verdict. Hence, failure to charge on aggravated assault was harmless on "the unusual facts here." [102 N.J. at 146-47, 506 A.2d 708].
Thus, the essential rationale of Grunow is that even though theoretically the jury should not have considered defendant's guilt of aggravated manslaughter without first concluding that he had not acted purposefully or knowingly and that he therefore could not be guilty of passion/provocation manslaughter, in actuality the jury may have found defendant guilty of aggravated manslaughter due to mitigating circumstances which could have resulted in a verdict for the lesser degree offense of passion/provocation manslaughter if the jury had been properly charged.
In Crisantos, the defendant was charged with felony murder and purposeful or knowing murder. The trial court instructed the jury to consider defendant's guilt of purposeful or knowing murder only if it acquitted him of felony murder and refused to submit passion/provocation manslaughter to the jury as a lesser included offense of purposeful or knowing murder. The jury found defendant guilty of felony murder and did not consider purposeful or knowing murder. We held that the court's failure to submit passion/provocation manslaughter to the jury was harmless error, because the jury had convicted defendant of felony murder, a crime not amenable to mitigation based on *168 passion/provocation. However, the Supreme Court disagreed, stating that:
A jury may acquit or convict on a lesser charge although satisfied that the State has proven its case beyond a reasonable doubt....
Accordingly, the fact that the jury in this case convicted appellant of felony murder does not necessarily mean that it would have returned the same verdict if manslaughter had also been charged. It had the power, for example, to return arguably inconsistent verdicts of robbery and manslaughter or to have acquitted for robbery and convicted for manslaughter alone. [102 N.J. at 272-73, 508 A.2d 167].[4]
Thus, as in Grunow, the Court's essential rationale in Crisantos was that even though theoretically the jury should not have reached the issue of defendant's guilt of passion/provocation manslaughter in view of its finding that he was guilty of felony murder, in actuality the jury may have found defendant guilty of felony murder only because it was convinced that he was guilty of some form of murder. Consequently, the trial court's failure to submit passion/provocation manslaughter deprived the jury of the opportunity of returning a verdict for a lesser degree offense based on considerations of lenity.
In contrast, the jury in this case was instructed regarding aggravated manslaughter and thereby given the opportunity to return a verdict for this lesser included homicide offense. Moreover, the offense of aggravated manslaughter includes all the elements of reckless manslaughter, but requires the additional element of acting "under circumstances manifesting extreme indifference to human life." Therefore, there is no realistic possibility that the jury, having rejected the alternative of finding defendant guilty of aggravated manslaughter, would have found him guilty of reckless manslaughter if it had been presented with that additional alternative.

*169 III
We turn finally to the sentence, particularly its consecutive features, which consist of consecutive terms of life imprisonment, with thirty years parole ineligibility, for murder, five years imprisonment for possession of a handgun without a permit, and ten years imprisonment, with five years parole ineligibility, for possession of a firearm for an unlawful purpose.
The criteria for determining whether consecutive sentences should be imposed were set forth in State v. Yarbough, supra, as follows:
(1) there can be no free crimes in a system for which the punishment shall fit the crime;
(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
(a) the crimes and their objectives were predominantly independent of each other;
(b) the crimes involved separate acts of violence or threats of violence;
(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
(d) any of the crimes involved multiple victims;
(e) the convictions for which the sentences are to be imposed are numerous;
(4) there should be no double counting of aggravated factors;
(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and
(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses. [100 N.J. at 643-44, 498 A.2d 1239].
In imposing three consecutive terms of imprisonment, the trial court failed to give explicit consideration to the sentencing criteria set forth in Yarbough. Furthermore, the sentence clearly violates Yarbough criteria six, because the aggregate term exceeds that sum of the longest terms that could be imposed for the two most serious offenses of which defendant was convicted. Therefore, the matter must be remanded for *170 resentencing in conformity with Yarbough. In addition, the trial court should reconsider whether defendant's conviction for possession of a weapon for an unlawful purpose should merge with his conviction for murder in light of the principles set forth in State v. Williams, 213 N.J. Super. 30, 35-37, 516 A.2d 265 (App.Div. 1986), certif. denied, 107 N.J. 104, 526 A.2d 177 (1987).
Accordingly, we affirm defendant's conviction but remand for resentencing.
NOTES
[1] The indictment charging defendant also charged Juan Rivera Mendieta with the same offenses. Mendieta was tried separately and acquitted of all charges. The State called defendant as a witness at Mendieta's trial, which was held subsequent to defendant's trial, and, after he had been granted immunity, attempted to question him. However, defendant refused to testify, which resulted in his being found guilty of contempt and sentenced to a six month term of imprisonment, to be served consecutively to his sentence in this case. We affirmed that conviction and sentence in In re Mendez, A-6231-89T4 (decided July 29, 1991).
[2] For similar reasons, there does not appear to have been any basis for the trial court to submit aggravated manslaughter to the jury as a lesser included offense. See the discussion in section II of this opinion regarding the relationship between the offenses of aggravated and reckless manslaughter. However, any error in submitting aggravated manslaughter to the jury could only have benefited defendant and hence there is no need to decide the issue.
[3] The United States Court of Appeals subsequently held that we erred in concluding that the failure to submit aggravated assault to the jury as a lesser included offense was harmless error and directed that Vujosevic be granted a writ of habeas corpus. Vujosevic v. Rafferty, 844 F.2d 1023, 1027-28 (3d Cir.1988). The Third Circuit held that the failure to instruct the jury regarding aggravated assault unfairly deprived Vujosevic of the opportunity to have the jury consider his primary defense, noting that "[t]he factual question placed in issue by Vujosevic's defense was not the level of culpability, but rather the causation of [the victim's] death." Id. at 1028. But compare Schad v. Arizona, ___ U.S. ___, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). Although we express no view on the disagreement between this court and the Third Circuit in Vujosevic, we are satisfied that any error in refusing to submit reckless manslaughter to the jury in this case would be harmless even under the Third Circuit's approach, because the only difference between aggravated and reckless manslaughter is the level of culpability of the accused. State v. Grunow, supra; State v. Curtis, supra.
[4] The Court in Crisantos ultimately sustained defendant's conviction on the ground that there was no rational basis for submitting the lesser included offense of passion/provocation manslaughter to the jury. Id. at 278, 508 A.2d 167.